STATE OF OHIO EX REL. FULTON V. DEPUTY STATE SUPERVISORS, LICKING CO. ET AL.

1. FILING NOMINATION PAPERS IS MANDATORY.

The requirement of sec. 9 of the election laws of Ohio (93 Ohio Laws, 189) that in cities where the voters are registered, the nomination of city officers shall be filed with the city board of elections not less than fifteen (15) days previous to the day of election, is not mandatory.

2. WHERE ONLY OBJECTION TO BELATED CERTIFICATE IS THE TIME IT WAS DONE, DEEMED TO HAVE BEEN FILED IN TIME.

Where it appears that such certificate has been filed in ample time in which to advertise for bids and print the ballots, and no objection is made otherwise, except as to the precise time in which it was done, and that the non-observance in this regard could not affect the result of the election, its fairness or honesty, such certificate so filed will be deemed to be filed in time, notwithstanding the requirement of the statute is mandatory in form.

3. TRANSMISSION OF ORIGINAL CERTIFICATE COMPLIES WITH THE LAW.

That the duty imposed by sec. 13 (93 Ohio Laws, 190), relative to the transmission of certified copies of certificates of nomination is legally performed when such board has duly certified the original certificate instead of copy thereof as provided by this section.

MANDAMUS.

VOORHEES, J.

The case of The State of Ohio ex rel., Thomas B. Fulton v. The Board of Deputy State Supervisors of Licking county, Ohio, and William Christian, Andrew J. Crilley, James J. Hill, Samuel Woolway, as deputy state supervisors of elections for Licking county, and Robert W. Howard, as clerk of said deputy state supervisors :

This is a proceeding in mandamus to compel the defendant board to print tickets for the democratic party nominated at a convention held in this city.

Our attention will be first directed to the demurrer of the board filed to the petition. It is claimed by the demurrant that the petition does not state facts sufficient to entitle plaintiff to the relief, because the certificate was not filed with the board of elections of this city, it being a city requiring registration.

The petition does not disclose the fact that Newark is such a city. There is no allegation in the petition that would require the certificate to be filed with any other board than as indicated by the facts set forth in the petition ; and it is not necessary to consume time in the consideration of the question raised by the demurrer; and therefore the demurrer will be overruled.

This brings us to the consideration of the questions that are presented by the answer and reply that have been filed in the action.

We may summarize the facts as admitted by the pleadings, and as found by the court, as follows:

On March 4, 1899, at a primary convention held by the democrats of Newark, the relator, T. B. Fulton, was nomiated for the office of city

solicitor, and others were nominated for various offices as set forth in the petition. The chairman and secretary of said primary, or convention, made out in due form of law a certificate of all of said nominations, and duly verified the same. On March 13, 1899, said original certificate of nominations was filed with the defendant Board. On March 24, 1899, the relator demanded of defendant Board, while in session, that his name, and the names of all of said candidates, be printed on the ballot to be used at the election to be held on April 3, 1899. Said Board refused so to do.

Newark is a city in which the voters are registered, and are required by law to be registered. On March 20, 1899, and not earlier, said original certificate of nominations was presented to the president of the city board of elections of said city of Newark. On March 21st, said original certificate was filed with the clerk of said city board, and said filing is endorsed by him on said certificate, as appears on said certificate. On the same day, March 21, 1899, a motion was voted on by said city board to confirm said democratic nomination, and said motion was lost. That on said twenty-first day of March, 1899, the secretary of said city board handed said original certificate of nominations to William C. Christian, who was then, and still is, the chief deputy supervisor of said defendant Board, and the same has ever since remained in the possession of said Christian, or of the secretary of said defendant Board, (Howard).

The said Board of Elections never certified any copy of said certificate of nominations to said county Board, and never took any action or did anything towards transmitting to said county Board, either a copy, or the original of said certificate of nominations, except as hereinbefore stated. No objections were ever made or filed to said certificate of nominations. No claim is made up to this time that defendant Board has printed the ballots for said election.

The question involved in this case is to be determined by the construction to be given to several sections of the statute of this state, regulating the conduct of elections, and the duties of certain officers in connection therewith.

The purpose of these enactments was to provide the mode of conducting elections, to insure the secrecy of the ballot, and prevent fraud and intimidation at the polls. To this end, and as a part of the system, provision is made for the mode and manner of making nominations of candidates for public office, as well as for their election after they are so nominated,

Nominations of candidates for public office may be made, among other ways and methods, by convention, caucus, meetings of the qualified electors to be held by such electors representing a political party which, at the next preceding general election polled at least one per cent. of the entire vote cast in the state. Such party may make one nomination for each office to be filled at the following election, which nomination, to be valid, must be certified as provided by law. Every certificate of nomination shall state such facts as are required in the act regulating the same for its acceptance, and shall be signed by the proper officers of such convention.

In the case under consideration, no objection was or has been made in any way or manner to the certificate as to the form or substance as made and certified by the officers of the convention that made the nomination. So we will pass at once to the question as to whether or not the certificate of nominations have passed into the possession of the defend-

State ex rel. v. Deputy State Supervisors et al.

ant Board, under the provisions of the law, which will entitle the relator to the relief prayed for in his petition.

By the 9th section of the election law, it is provided that, in cities such as the city of Newark, where the voters are registered, the nomination of city officers shall be filed with the city board of elections not less than fifteen days previous to the day of such election. It is provided in the next section (sec. 10) that certificates of nomination and nomination papers, when filed, shall be preserved and be open, under proper regulations, to public inspection.

The certificate of nominations being so filed, if in apparent conformity with the act, shall be deemed to be valid.

I wish to notice the language again (and I am quoting from the statute): "If the certificate is in apparent conformity with the statute," —not necessarily in exact conformity,—and the legislature has not been proper to define just what that is; but, if it is "*in apparent conformity*" then "it shall be deemed valid, unless objections thereto are duly made, in writing, within five days after the filing thereof."

No objections in writing or otherwise have been filed to the certificate in this case with the defendant Board, or the City Board of Elections of this City. The only thing appearing in the record is the motion to confirm the democratic nominations as hereinbefore stated; which motion was lost. There was no dispute in the Board, nor were there any questions arising in the course of the nomination of any of these candidates, before said Board, or either of them. Therefore, there was no question of dispute to be submitted to any other tribunal, such as the State Supervisor of Elections.

So, the contention remains, viz.: Whether the certificate, being in *apparent conformity* with the statute, shall be deemed valid.

The contention is, that as the certificate was not filed with the City Board of Elections, not less than fifteen days previous to April 3d, (the day of the election) it is utterly void. This contention raises a question requiring the construction of sec. 9 of the election laws. If the requirement as to time of filing is mandatory, certain results will follow. If it is merely directory, then other questions may be properly considered. If it is mandatory as to the filing of the certificate, then it will put an end to this controversy, if it was not so filed within the time prescribed by the statute.

If the purposes of the law are, as we have intimated and supposed, primarily, to secure: First: An honest and fair nomination for public office ; and, Second: Fairness and honesty as a result of the election, the question may be presented in this form: Should this object of the statute be defeated by a mere irregularity, which would not and could not make the result of the election doubtful? We think it should not receive such construction, unless the language of the statute is so explicit that the intention of the legislators can only be ascertained by giving it this mandatory construction. Is not the question of time in the statute analogous to the question of time in a contract, being, or not being, of the essence of the agreement? It may be stated as a general rule, that time is not of the essence of a contract unless it clearly appears from the nature of the subject-matter of the contract, that the parties intended that it should be of the substance or essence of the contract ; or that its spirit and its purpose would be defeated unless effect be given to the time named therein.

Unless it can be asserted that the object and purpose of this election statue, having for its primary object the securing of correct nominations and honest elections, will be defeated, if these certificates of nominations are not filed with the proper Board exactly within the time mentioned in the statue.   But if otherwise, then the mandatory construction is not the true construction.

Attention will be directed to some of the provisions of the statute bearing upon this question if literally construed :

First, the certificate must be filed not less than fifteen days previous to the day of such election.   Then there are five days given for filing exceptions or objections to the certificate.   That leaves ten days.   The statute also provides that the county Board shall advertise for bids for printing the ballots for ten days ; and the ballots must be printed and ready for delivery within three days before the election.

If all these things or requirements are to be strictly construed as to time, they cannot be done in fifteen days, if the whole limit of time is given.   It would require at least eighteen days.

So, it is apparent that these provisions as to time are not mandatory, but directory ; and, being so, a failure to strictly comply with these provisions as to time will not invalidate or destroy the purpose of the enactment, viz.: to secure an honest and fair election.

We look upon these omissions as merely irregularities.   How should such irregularities be considered?   McCreary's Election Laws, séc. 190 : " Those irregularities which are not declared by law to be fatal, or which do not render the result of the election doubtful, should be ignored, and the provisions of the law that were infringed upon by such irregularity should be deemed merely directory."

If the legislature had contemplated or intended that this question of time for filing the certificate should be unchangeable, would it not have said, unless the certificate is filed not less than fifteen days before the election, the filing of the same after that time should be void, and of no effect?   Then the intention of the legislature would be manifest that it intended to make time the essence of the law.

The same purpose can be accomplished under the law by holding that this provision as to time is directory, rather than mandatory.   To hold it to be mandatory in case such as is shown here would, in the language of Judge Pugh, in Gregg v. Rogers, 1 N. P. R., 121, " be repugnant to one's sense of fairness and justice."   How can any one be prejudiced ?   How could the public be prejudiced ?   How could any citizen or elector be prejudiced by giving a construction to the statute that an irregularity that is so apparent cannot be fatal to an honest election, but would practically disfranchise many citizens who are not in any way at fault ?

In view of such consequences, this court prefer to regard that requirement of the law, viz.:   the filing of the certificate of nomination with these Boards of election, as merely directory ; so that a failure to comply with its strict letter did not render the certificate void when it was filed with the clerk of the city Board but two days short of the time specifically named in the statute.

Our conclusion is that the certificate was legally filed with the city Board.   A filing with its clerk, and his endorsement thereof is sufficient to consummate a legal filing with that Board or body ; and we think that would be in analogy to the filing of a paper that must be filed in court : Filing it with the clerk is a filing in the court; and then the Board, be-

ing considered as a judicial Board, the filing of the paper with its clerk, brings it into the jurisdiction of that body.

In this case the certificate was legally filed with the city Board; and, there being no objections filed to it, although there may be some informality or irregularity attending the filing, if it is apparently in conformity to the law, it shall be deemed valid.

This brings us to the consideration of the second question:

Was the certificate properly transmitted from that Board to the Deputy State Supervisors of this county, under sec. 13 of said election law? The contention is that under this section only certified copies of all nominations filed with the city Board shall be certified to the deputy state board of supervisors, and that no such copy of the certificate in this case was transmitted. But, the original was transmitted, or handed by the secretary of the city Board to William C. Christian on the twenty-first of March, 1899, who as then, and still is, the chief Deputy Supervisor of said defendant Board.

We will first consider what the object of transmitting certified copies of the certificate to such Board is:

We assume it to be to enable that board to discharge a duty imposed upon it by law, viz.: To order and arrange for the printing of the ballots. The certificate should be certified so the Board may know that it is genuine, and that the persons therein have been legally or duly nominated for the respective offices named in the certificate.

Grant this to be so, and, if this be the purpose, can a copy be any better or safer to furnish this information than the original itself? We think not. To hold that it can only be accomplished by a certified copy, would be an unreasonable construction, which we think is not required. That there are cases under the statute where copies would be required, is true. For example: Where there are several different boards to be certified to, copies would be used; but where the purpose, (and there can be no other purpose) in order to preserve the purity of the election, the purety and safety of the ballot, the tickets that are to be printed are to have the stamp upon them that they are regular, the regular nominee, when there is no objection to the original certificate which has been certified, no complaint made to it, when such certificate comes into the hands of the board that is to have the ballots printed, can there be any better evidence as to the correctness or genuineness of the nomination than what the original certificate would afford?

We can see no reason why the ballots cannot be as safely and correctly made from the original certificate as from a certified copy.

Therefore, we hold that the defendant Board, having received this duly verified certificate of the nomination, which had been filed with the secretary of the city Board, the object and purpose of the law has been served and fulfilled; and it has been complied with by the Deputy State Board in printing the ballots when they do print them from that duly verified certificate.

It is made the duty under the law that the Deputy State Supervisors shall get a certified certificate from the city Board to print the ballots. They have no discretion in the matter. The law imposes this duty upon them. But, they have refused, upon demand in this case, to print the ballots. We think, under the facts and circumstances, and from the construction of the statute as given by the court, they have no right to refuse. That this is a duty that is imposed upon them by law; that they cannot, in their discretion determine to refuse to obey it.

Therefore, the prayer of the relator will be granted, and the writ will issue.

On behalf of relator : *Hon. S. M. Hunter, Hon. J. B. Jones; T. B. Fulton, J. R. Fitzgibbon.*

On behalf of respondents: *Hon. T. W. Philipps; Hon. Chas. H. Kibler; G. C. Daugherty, Carl Norpell; Frederick M. Black.*